Scott E. Gizer, SBN 221962
  *sgizer@earlysullivan.com*
Stephen Ma, SBN 214998
  *sma@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for Plaintiff
SUN WEST MORTGAGE COMPANY, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN WEST MORTGAGE COMPANY, INC., a California corporation,<br><br>                     Plaintiff,<br><br>          vs.<br><br>FIRST MARINER BANK, a Maryland chartered bank; LTC GLOBAL, INC., a Nevada corporation; NGFS ACQUISITION GROUP LLC, a Delaware limited liability company; DANIEL SCHMEDLEN, an individual,<br><br>                     Defendants. | Case No.: 2:15-cv-05982-PSG-(ASx)<br><br>**PLAINTIFF SUN WEST MORTGAGE COMPANY, INC.'S TRIAL BRIEF**<br><br>Complaint filed:  August 6, 2015<br><br>Trial date:  May 9, 2017<br><br>Hon. Philip S. Gutierrez |

175335.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................ 1

II.   SUN WEST'S RESPONSES TO FMB'S MEMORANDUM ...................... 2

    A.   Sun West's Contract Claim Is Not Time-Barred ................................ 2

    B.   Sun West Has Not Waived Any Rights Or Conditions ....................... 6

    C.   FMB Was Required To Provide Assignments Of Mortgages To Sun West ............................................................................................. 8

    D.   FMB Was Not "Shielded" From The Services Agreement ................. 9

    E.   FMB Was Obligated To Obtain FNMA Approval ............................ 10

    F.   Sun West Has Produced Sufficient Evidence To Support Its Request For Compensatory Damages .................................................. 13

    G.   Sun West's Request For Damages In Connection With The LTC Litigation Is Supported By The Evidence .......................................... 15

    H.   FMB's "Affirmative Defenses" Are Not Supported By The Law Or The Evidence ............................................................................... 16

        1.   Statute of Limitations ............................................................. 16

        2.   Failure To State Claims Upon Which Relief Can Be Granted .................................................................................... 16

        3.   Laches ..................................................................................... 17

        4.   Waiver .................................................................................... 17

        5.   Estoppel .................................................................................. 17

        6.   Doctrine Of "Unclean Hands" ................................................ 18

        7.   Release .................................................................................... 18

        8.   Failure To Mitigate ................................................................ 18

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

175335.1

# TABLE OF AUTHORITIES

Page

## Cases

*Agam v. Gavra*,
   236 Cal. App. 4th 91, 111 (2015) ........................................................... 18

*Arizona v. Tohono O'odham Nation*,
   818 F.3d 549, 559 (9th Cir. 2016) ........................................................... 6

*Aryeh v. Canon Bus. Solutions, Inc.*,
   55 Cal. 4th 1185, 1192 (2013) ........................................................... 3, 5

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001 ........................................ 17

*Eidson v. Medtronic, Inc.*,
   40 F. Supp. 3d 1202, 1217 (N.D. Cal. 2014). ........................................... 3

*El Pollo Loco, Inc. v. Hashim*,
   316 F.3d 1032, 1039 (9th Cir. 2003) ..................................................... 3

*Grisham v. Philip Morris, Inc.*,
   670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) ....................................... 3

*Hudson v. Lancaster State Prison*,
   2009 WL 4730872, at *6 (C.D. Cal. Dec. 4, 2009) ............................... 18

*J.B. Painting & Waterproofing, Inc. v. RGB Holdings, LLC*,
   650 F. App'x 450, 455 (9th Cir. 2016) ................................................. 4

*Kennecott Corp. v. Union Oil Co.*,
   196 Cal. App. 3d 1179 (1987) ........................................................... 12

*McCaskey v. California State Auto. Assn.*, 189 Cal. App. 4th 947, 959 (2010) .. 3, 4, 5

*Mezzadri v. Med. Depot, Inc.*,
   2015 WL 12572619, at *11 (S.D. Cal. Feb. 12, 2015) .......................... 17

*Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*,
   378 F. Supp. 2d 1189, 1198 (C.D. Cal. 2005) ..................................... 14

*Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach.*,
   688 F. Supp. 2d 902, 912–13 (N.D. Cal. 2010) ................................... 7

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764, 780 (9th Cir. 2002); ..................................................... 3

*Quintana v. Baca*, 233 F.R.D. 562 (C.D. Cal. 2005) ........................................ 16

*Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) .............................. 3

*United States v. Ruby Co.*,
   588 F.2d 697, 703 (9th Cir. 1978) ..................................................... 17

**PLAINTIFF SUN WEST MORTGAGE COMPANY'S TRIAL BRIEF**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

175335.1

*Vogel v. OM ABS, Inc.*, No. CV 13-01797 RSWL (JEMx), 2014 WL 340662, *2
   (C.D. Cal. Jan. 30, 2014) ........................................................................... 16

*Waller v. Truck Ins. Exch., Inc.*,
   11 Cal. 4th 1, 31 (1995), *as modified on denial of rehg* (Oct. 26, 1995) ............. 6, 7

## <u>Statutes</u>

Cal. Civ. Code § 1641................................................................................. 12



**PLAINTIFF SUN WEST MORTGAGE COMPANY'S TRIAL BRIEF**

175335.1

Plaintiff Sun West Mortgage Company ("Sun West" or "SWMC") submits the following Trial Brief pursuant to Local Rule 16-10:

## I.      **INTRODUCTION**

This lawsuit arises out of a business dispute between Sun West and defendant First Mariner Bank ("First Mariner" or "FMB") concerning a transfer from FMB to Sun West of a portfolio of reverse mortgages owned by the Federal National Mortgage Association ("FNMA" or "Fannie Mae").  This portfolio included nearly 2,200 loans that are now the subject of this litigation—the "Serviced Loans."  In connection with this transfer, FMB and Sun West entered into an Assignment of Servicing Rights, dated March 31, 2011 (the "Assignment Agreement").  In accordance with the Assignment Agreement, Sun West also executed a Services and Indemnification Agreement (the "Services Agreement") between Sun West, and LTC Global, Inc. ("LTC") and NGFS Acquisition Group, LLC ("NGFS").  The Services Agreement was expressly incorporated by reference as "Exhibit C" into the Assignment Agreement.

As will be demonstrated at trial, FMB has engaged in multiple acts of wrongdoing in connection with or related to the Serviced Loans including, but not limited to: (1) failing to execute necessary Assignments of Mortgages to allow Sun West to service the portfolio of mortgages; (2) failing to provide complete servicing files, origination files, and other documents necessary to transfer the loan portfolio in compliance with industry standards, including, among other things, title policies, necessary loan disclosures, deeds of trusts, and critical borrower information; and (3) failing to inform Sun West of Fannie Mae's non-approval of the transfer of servicing rights and servicing fees.  Additionally, FMB has refused to indemnify Sun West for defaulted loans in violation of its obligations under the Assignment Agreement.

Based on FMB's multiple acts of wrongdoing in connection with the transfer, Sun West asserted four causes of action against FMB for breach of written contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligence.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

By order dated February 8, 2017, the Court granted FMB's motion for summary judgment as to Sun West's breach of the implied covenant of good faith and fair dealing, fraud, and negligence claims.  (ECF Doc. No. 177.)  At trial, Sun West now moves forward with its  cause of action for breach of written contract.

Sun West has suffered substantial damages as a result of FMB's breach of contract, including but not limited to:  (1) $4,090,228 of curtailed debenture interest; (2) $2,154,438 of expenses incurred in connection with prior litigation with LTC (the "LTC Litigation"), including, but not limited to, the settlement payment to LTC, as well as attorney and expert fees and costs; and (3) costs and expenses of $1,442,849 related to loans for which Sun West has sought indemnification from FMB.[1]  In sum, Sun West has suffered at least $7,740,919 in damages due to FMB's wrongdoing.

Pursuant to Local Rule 16-10, Sun West submits this Trial Brief to reply to FMB's Amended Memorandum of Contentions of Fact and Law, filed on March 22, 2017 (the "Memorandum").  (ECF Doc. No. 182.)  Sun West is unaware of any newly decided cases that materially change the law in connection with the claim or issues in this lawsuit.  The Court has not directed the parties to brief any specific issues in this Trial Brief.

## II.   SUN WEST'S RESPONSES TO FMB'S MEMORANDUM

### A.   Sun West's Contract Claim Is Not Time-Barred

FMB contends that Sun West's contract claims are barred by the applicable four-year statute of limitations.  Specifically, FMB argues that the alleged breaches of the Assignment Agreement "necessarily occurred on or before June 2011, more than four years before SWMC commenced the instant lawsuit against 1st Mariner." (Memo., p. 3:4-5.)  For the reasons discussed below, FMB has not (and cannot) meet

---

[1]  Sun West is currently analyzing its calculation of debenture interest curtailment and other damages issues in connection with ongoing discussions with counsel for FMB.   As such, Sun West may lower its damages claims in accordance with its analysis.



its burden of proving that Sun West's contract claim is time-barred.  *See Grisham v. Philip Morris, Inc.,* 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (the statute of limitations is an affirmative defense and the "defendant has the burden of proving the action is time-barred").

As set forth in Sun West's opposition to First Mariner's previously-filed Motion for Summary Judgment (which the Court denied on February 8, 2017 (ECF Doc. No. 177.)  ), it is well established law that "in ordinary tort and contract actions, the statute of limitations ... begins to run upon the occurrence of the last element essential to the cause of action." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003).  For contract claims, a cause of action is only complete with all of its elements when the plaintiff has suffered harm or damages as a result of the defendant's breach. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (stating elements of a breach of contract claim).  The statute of limitations is not triggered by a breach that produces no immediate harm or only nominal damages. Rather, the limitations period only begins to run when the plaintiff suffers appreciable and actual harm. *See, e.g., McCaskey v. California State Auto. Assn.*, 189 Cal. App. 4th 947, 959 (2010) (the statute of limitations does not ordinarily begin to run until "the plaintiff possesses a true cause of action," meaning that "events have developed to a point where the plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages").

In addition, the courts and the Legislature have developed numerous equitable exceptions to the usual rules governing statute of limitations periods. *Aryeh v. Canon Bus. Solutions, Inc*., 55 Cal. 4th 1185, 1192 (2013).  For example, "the discovery rule provides that the statute of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 780 (9th Cir. 2002); *Eidson v. Medtronic, Inc*., 40 F. Supp. 3d 1202, 1217 (N.D. Cal. 2014).  Moreover, the continuing violation doctrine "aggregates a series of wrongs or injuries for purposes

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

175335.1

of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh*, 55 Cal. 4th 1192 (citation omitted); *J.B. Painting & Waterproofing, Inc. v. RGB Holdings, LLC*, 650 F. App'x 450, 455 (9th Cir. 2016) (holding that contract claim was timely under the doctrine of continuous accrual).

In the instant action, the evidence shows that Sun West did not have notice of FMB's various breaches of the Assignment Agreement until well after the actual transfer occurred on June 1, 2011. Indeed, the underlying transfer transaction involved a portfolio of <u>nearly 2,200</u> reverse mortgage loans. (Trial Ex. 1.) Thus, it would have been impossible for Sun West to meaningfully evaluate each of these loan files on June 1, 2011 (the same date of transfer) and determine whether FMB fully complied with its various contractual obligations under the Assignment Agreement.

Moreover, Sun West's breach of contract claim was not complete as a matter of law until it suffered appreciable damages and debenture interest was curtailed as a result of FMB's breaches. *See McCaskey*, 189 Cal. App. 4th at 959. By way of background, FNMA-owned reverse mortgages, like the Serviced Loans, are insured by the U.S. Department of Housing and Urban Development ("HUD"). (Trial Ex. 111, p. 5.) Consequently, HUD will compensate servicers, like Sun West, for mortgage interest accruing on the insured loans provided certain servicing requirements are met. (*Id*.) HECM approved servicers must adhere to applicable FNMA and HUD servicing requirements in order to receive the maximum allowed benefits under the mortgage insurance policy. (*Id*.) The failure to adhere to one or more servicing requirements will generally result in debenture interest curtailments upon claim filing. (*Id*.) When HUD curtails debenture interest, the curtailed amount is deducted from the amount owed to the owner of the loan, here—FNMA. (*Id*.) FNMA then looks to Sun West for reimbursement for any curtailed debenture interest. (*Id*.) Thus, Sun West would not suffer harm as a result of debenture interest

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

175335.1

1    curtailment until FNMA eventually sought reimbursement from Sun West in 2015.

2         In the instant case, the evidence demonstrates that FMB failed to adhere to

3    usual and customary servicing transfer practices and FNMA transfer requirements to

4    provide certain mortgage servicing documents, such as Assignments of Mortgages,

5    origination documents (*e.g.*, applications, verifications of identity and age, and

6    servicing pay histories), and required appraisals that directly resulted in the

7    curtailment of mortgage interest by HUD.  (Trial Ex. 33.)  In addition, FMB was

8    responsible for non-compliance of HUD servicing requirements prior to the transfer

9    to Sun West and these non-compliant actions also caused the eventual interest

10   curtailments.  (Trial Ex. 111, p. 5.)

11        As a result of FMB's wrongdoing in connection with the transfer, Sun West has

12   suffered millions of dollars in damages, including $4,090,228 in curtailed debenture

13   interest, among other things.  (Trial Ex. 116, p. 11.)  Thus, Sun West's breach of

14   contract claim did not arise until Sun West suffered these appreciable damages,

15   which occurred several years after the June 1, 2011 transfer date.  *See McCaskey*,

16   189 Cal. App. 4th at 959.  For this additional reason, Sun West's contract claim is

17   not barred by the four-year statute of limitations.

18        Furthermore, Sun West's contract claim is based on several additional

19   breaches of the Assignment Agreement, which FMB largely ignores.  For example,

20   Sun West alleges that FMB breached its obligations by failing to indemnify Sun

21   West in connection with the reverse mortgages that are in default in accordance with

22   Paragraph 8 of the Assignment Agreement, and by failing to obtain FNMA's

23   approval of the transaction.  (ECF Doc. No. 51, Second Amended Complaint

24   ("SAC"), ¶ 32.)  The limitations period accrued at different times for these additional

25   breaches, based on when the breaches were discovered and the resulting harm.  *See*

26   *Aryeh*, 55 Cal. 4th 1192.  In fact, the additional breaches were not discovered until

27   2015 (the same year this lawsuit was filed), when Sun West demanded

28   indemnification from FMB and when Sun West first discovered that FNMA did not

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

actually approve of the transaction.  (Trial Ex. 42.)  In addition, there is also evidence showing that FMB breached Paragraphs 1, 5.2, 5.3, 6, 8, 9, and 16.  FMB does not (and cannot) dispute that these additional breaches are not time-barred.

### B.   Sun West Has Not Waived Any Rights Or Conditions

FMB argues that Sun West "expressly waived" certain conditions in the Assignment Agreement by:  (1) completing the transfer of servicing rights for the Serviced Loans on June 1, 2011; and (2) executing the Amendment to the Assignment Agreement on July 8, 2011.  (Memo., p. 20:4-6.)  For the following reasons, FMB's contention is not supported by the law or the facts.

"Waiver is the _intentional_ relinquishment of a known right _after full knowledge of the facts_."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995), *as modified on denial of rehg* (Oct. 26, 1995) (emphasis added); *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016) ("A waiver is an intentional relinquishment or abandonment of a known right or privilege.").  "The burden ... is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver."  *Waller*, 11 Cal. 4th at 31.  FMB has not met its burden here.

In the instant case, there is no evidence to suggest that Sun West voluntarily or actually intended to relinquish its rights in connection with the Assignment Agreement.  As previously discussed, it would have been impossible for Sun West to evaluate each of nearly 2,200 loan files and determine whether FMB had fully complied with its contractual obligations on the same day Sun West received these loans, June 1, 2011.  Thus, Sun West has not waived any conditions under the Assignment Agreement simply by moving forward with its acquisition of the servicing rights on June 1, 2011.  As a matter of law, Sun West could not have voluntarily or intentionally relinquished its right to assert its breach of contract claim because Sun West did not have full knowledge of the facts, including FMB's numerous breaches of the Assignment Agreement, on June 1, 2011.  *Operating*

6

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

175335.1

*Engineers' Pension Trust Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 912–13 (N.D. Cal. 2010).

FMB also claims that Sun West purportedly waived its right to assert its breach of contract claim by executing the Amendment on July 8, 2011. The same reasoning set forth above applies to this contention. As of July 8, 2011—only one month after Sun West received nearly 2,200 loan files from FMB—Sun West did not have full knowledge of the facts demonstrating that FMB violated the Assignment Agreement in numerous respects. Thus, Sun West could not have voluntarily or intentionally relinquished its right to assert its breach of contract claim by executing the Amendment on July 8, 2011. *Id.*

Furthermore, the parties dispute the meaning of the following words in Paragraph 4 of the Amendment:

> Transfer Date. The parties hereto acknowledge and agree that the assignment of the Servicing Rights to Sun West took place on June 1, 2011 (the "Transfer Date"), that each reference in this Amendment and the Assignment Agreement to the Transfer Date shall mean and be a reference to June 1, 2011, and that all conditions to the assignment of the Servicing Rights, as set forth in the Assignment Agreement, were either satisfied or waived by Sun West or FMB as of the Transfer Date.

Paragraph 4 of the Amendment does not mean that Sun West agreed to satisfy or waive all conditions to the assignment of the Servicing Rights. Rather, as testified under oath by Sun West's CEO, Pavan Agarwal, Paragraph 4 simply means that Sun West agreed to satisfy or waive any conditions relating to the change of the Transfer Date from May 1, 2011 to June 1, 2011. As a matter of law, any doubt on this issue must be decided against a finding of waiver and in favor of Sun West. *See Waller*, 11 Cal. 4th at 31.

**PLAINTIFF SUN WEST MORTGAGE COMPANY'S TRIAL BRIEF**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

## C.   __FMB Was Required To Provide Assignments Of Mortgages To Sun West__

FMB also contends that it "was not contractually obligated to provide Assignments to SWMC under the Assignment Agreement." (Memo., p. 11:2-3.) FMB's contention is clearly contradicted by the terms of the Assignment Agreement and by established mortgage servicing industry customs and practices.

In fact, a recorded Assignment of Mortgage is necessary to assign FMB's rights under the mortgage to Sun West. (Trial Ex. 111, p. 7.)  Without a recorded Assignment of Mortgage from FMB, it would be impossible for Sun West to properly service the loan, including but not limited to, filing the first legal action to foreclose in the event of default. (*Id*.)  Thus, a complete servicing file necessarily includes an Assignment of Mortgage and is necessary to effectuate the transfer of servicing rights from FMB to Sun West. (*Id*.)  Indeed, FNMA specifically required FMB to provide the Assignments of Mortgages to Sun West. (*Id*.)  In this regard, a Form 629 approval letter from FNMA regarding the transfer provides, in relevant part: "[T]ransferee [Sun West] is to receive assignments of mortgage … from the transferor [FMB] within ten days of the effective date of the transfer.  These assignments must be recorded." (*Id*. at p. 4.)  Despite this explicit instruction from FNMA and its contractual obligations under the Assignment Agreement, FMB failed to provide the Assignments of Mortgages to Sun West, resulting in millions of dollars of damages to Sun West.

Contrary to FMB's contention, the Assignment Agreement required FMB to provide the Assignments of Mortgages to Sun West.  For example, Paragraph 4.4. provides, in relevant part: "FMB shall deliver, or shall have caused NGFS to deliver, to Sun West … a complete servicing file for each of the Serviced Loans (the "Servicing Files")…." (Trial Ex. 1, ¶ 4.4.)  A complete servicing file necessarily includes an Assignment of Mortgage. (Trial Ex. 111, p. 7.)  Moreover, Paragraph 7.2 required, among other things, that FMB "cooperate with NGFS and Sun West and

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

175335.1

take all actions that are necessary or appropriate to effectuate and evidence the transfer of the servicing of the Serviced Loans to Sun West." (Trial Ex. 1, ¶ 7.2.) FMB also expressly agreed, "to execute and deliver such instruments and take such actions as the other Party may, from time to time, reasonably request to effect the purpose and carry out the terms of the Agreement." (*Id*. at ¶ 16.) Thus, FMB was required to deliver the Assignments of Mortgages to Sun West because they were necessary to effectuate the purpose of the Assignment Agreement. Indeed, the Assignments of Mortgages were required to assign FMB's rights under the mortgage to Sun West and, therefore, were necessary to enable Sun West to properly service the subject loans, including initiating foreclosure if necessary. (Trial Ex. 111, p. 7.)

### D.   <u>FMB Was Not "Shielded" From The Services Agreement</u>

First Mariner also contends that Sun West, "as a FNMA-approved servicer since 1987, knew or should have known that the applicable FNMA servicing guidelines prohibited it from sharing servicing income from FNMA-owned loans with another entity or even entering into a contract to do so *without FNMA's express approval*…." (Memo., p. 1:21-2024.) FMB's contention is based on a faulty premise. In fact, Sun West never believed that it could share servicing fees "without FNMA's express approval." That is precisely why FNMA's approval of the underlying transaction, as set forth in the Services Agreement and Assignment Agreement, was absolutely critical to Sun West. Indeed, the sworn testimony of Sun West executives Sydney Fernandez and Pavan Agarwal demonstrates that Sun West would not have entered into any agreement with LTC, NGFS, or FMB concerning the Serviced Loans if Sun West had known that FNMA did not approve of the subject transaction.

The evidence also demonstrates that Sun West did not know, and had no reason to know, that FNMA did not approve of the transfer of servicing rights and fees pursuant to the Services Agreement and the Assignment Agreement. This is particularly true in light of the fact that LTC's former General Counsel, Daniel

9

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

Schmedlen, previously testified that FMB represented to LTC that FNMA had approved of the sharing of servicing fees between Sun West and LTC/NCFS.   (Trial Ex. 204, pp.161:18-162:12; 163:17- 164:8.)  Additionally, FMB represented to Sun West that it had approval for the transaction from FNMA.  In fact, the parties always understood that FMB would obtain FNMA's approval.  Despite the foregoing, the evidence shows that FMB specifically knew in approximately May 2009 (or earlier) that FNMA did not allow LTC or NGFS to receive any portion of such servicing fees.  (Trial Exs. 20, 24.)  Thus, FMB knowingly and intentionally failed to disclose to Sun West that LTC and NGFS were prohibited by FNMA from receiving such servicing fees.

Furthermore, FMB was not "shielded" from the Services Agreement.  To the contrary, the Services Agreement was executed in accordance with the Assignment Agreement and was specifically incorporated by reference as "Exhibit C" into the Assignment Agreement.  (Trial Ex. 1, ¶ 21, Ex. C.)  In fact, Paragraph 21 of the Assignment Agreement specifically provides, "[t]he Exhibits of this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement."  (*Id*.)  Thus, the terms of the Services Agreement, including any benefits and obligations, were expressly incorporated into the Assignment Agreement, to which FMB is a party.  (*Id*.)

### E.   FMB Was Obligated To Obtain FNMA Approval

FMB also argues that the parties to the Assignment Agreement, which includes Sun West, FMB, and NGFS, "expressly agreed that it was the sole responsibility of NGFS, not 1st Mariner, to obtain FNMA's approval of the transactions at issue in this case."  (Memo., p. 2:13-1014.)  As demonstrated below, FMB's contention is incorrect for several reasons.  In fact, the evidence demonstrates that FMB (not NGFS) was obligated to obtain FNMA approval for the transaction under the terms of the Assignment Agreement and FNMA's servicing guidelines.

First, when reading the contract as a whole, the plain language of the

10

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

Assignment Agreement does not establish that NGFS was the sole party that was responsible for obtaining approval of the transaction.  Pursuant to California law, the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.  FMB's assertion that Section 4.5, which states "NGFS, at its sole cost and expense (including, but not limited to payment of any transfer fee assessed by FNMA) shall have obtained and furnished to Sun West evidence of written approval of the Servicing Rights from FNMA," establishes that NGFS was solely responsible for obtaining approval of the transaction from FNMA, is incorrect because it impermissibly ignores the entirety of the contract.  Indeed, other sections of the Assignment Agreement make clear that FMB (not NGFS) was obligated to obtain approval for the transaction.

By way of example, in Section 5.3 of the Assignment Agreement, First Mariner made representations and warrantied that:

> Neither the execution and delivery of this Agreement and the other documents and agreements contemplated hereby, the consummation of the transactions contemplated hereby and thereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement and such other documents and agreements will … result in *the breach of any material term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under any material agreement … to which First Mariner or its property is subject, or result in the violation of any law, rule, regulation, order, judgment, or decree to which First Mariner or its property is subject*. (Emphasis added.)

Given that the Serviced Loans were governed by First Mariner's servicing contract with Fannie Mae, as well as subject to Fannie Mae's regulations, the plain language of Section 5.3 represented and warrantied that such transaction would not breach First Mariner's agreement with Fannie Mae, nor its servicing guidelines.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

First Mariner's narrow interpretation of Section 4.5 to require only NGFS to obtain approval for the transaction is inconsistent with these other contractual terms.

In addition, Section 7.2(ii) of the Assignment Agreement explicitly requires that FMB "cooperate with NGFS and Sun West and take all actions that are necessary or appropriate to effectuate and evidence the transfer of the servicing of the Serviced Loans to Sun West." As such, FMB agreed to take on responsibility for effectuating the transfer of servicing rights, which under FMB's own logic, would require seeking FNMA approval for the transaction. These contractual provisions were consistent with the parties' intention to ensure that FMB would work to secure FNMA approval, and that FMB provided representations and warranties that such FNMA approval would be secured.

Second, the parties' conduct makes clear that NGFS was not the sole party obligated to obtain approval for the transaction. California law provides that the conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions. *Kennecott Corp. v. Union Oil Co.*, 196 Cal. App. 3d 1179 (1987). Here, FMB's conduct evidences that it believed that it had an obligation to seek approval for the transaction. NGFS' Rule 30(b)(6) witness and former General Counsel, Daniel Schmedlen, testified in the LTC Litigation that FMB undertook the obligation to communicate and obtain approval for the transaction. (Trial Ex. 204, pp. 163:17-164:8.) Mr. Schmedlen further testified that FMB in fact discussed the transaction with FNMA in order to gain approval. (*Id*. at pp. 161:18-162:12; 165:7-18 (emphasis added).) Additionally, FMB represented to Sun West that it had approval for the transaction from FNMA. (Trial Ex. 420.) Thus, FMB cannot credibly claim that it believed that Section 4.5 solely required NGFS to obtain approval for the transaction.

Third, the established FNMA guidelines and relevant industry standards make it impossible for NGFS to be the sole party to obtain approval for the transaction.

**PLAINTIFF SUN WEST MORTGAGE COMPANY'S TRIAL BRIEF**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

This fact was acknowledged by FMB's own General Counsel and Rule 30(b)(6) witness, Joseph Howard, who testified under oath that NGFS was not a FNMA-approved servicer, and thus could not have obtained approval for the transaction.  If the Fannie Mae Selling and Servicing Guides require Fannie Mae's prior written approval before Fannie Mae allows an approved servicer to "sell, assign, transfer, pledge or hypothecate all or any portion of its compensation in excess of the amount needed to service mortgage loans and all or any portion of its right to receive reimbursement of servicing advances," such approval cannot be secured by NGFS/LTC, neither of which were FNMA-approved mortgage servicers.

Additionally, FMB made several representations to Fannie Mae that it did not sell the portfolio to NGFS, and thus it would have been nonsensical for NGFS to correspond with Fannie Mae regarding a portfolio that they did not own or have rights in.  Thus, FMB's contention that "the parties expressly agreed that it was the sole responsibility of NGFS, not FMB to obtain FNMA's approval of the transactions at issue in this case" is contrary to established industry standards, contrary to the established facts of this case, and contrary to common sense.

F.   **Sun West Has Produced Sufficient Evidence To Support Its Request For Compensatory Damages**

FMB claims that Sun West "has failed to provide any evidence to substantiate its claim for damages." (Memo., p. 3:17-18.)  FMB's claim is unsupported by the record and was already rejected by the Court in its ruling on FMB's motion for summary judgment.  As noted in the Court's summary judgment order Sun West has produced numerous documents in support of its damages claims, Bates-labeled as SWMC Summ003-77.  Moreover, FMB has deposed two of Sun West's experts, John Burnett and Dr. Barbara Luna, in connection with Sun West's damages claims.  This expert testimony, and the supporting expert reports and accompanying exhibits, provide additional evidence to support Sun West's request for compensatory damages.  For example, Dr. Luna's Expert Report provides, in relevant part:  (1)

13

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
175335.1

Overall curtailed debenture interest amount is $4,090,228; (2) Total LTC litigation expenses are $2,207,842; and (3) Total amount of indemnification requested on eight identified loans by Sun West is $1,442,849.  (Trial Ex. 116, p. 11.)  In sum, these three amounts total $7,740,919 in damages to Sun West.  (*Id*.)  All of the information and documents considered by Dr. Luna and supporting her opinions are listed in Exhibit 1 and attached as exhibits to her Expert Report.  (*Id*. at Ex. 1.)  Thus, Sun West has produced sufficient evidence to support its claim for compensatory damages.

FMB also argues that "neither SWMC nor any of its expert witnesses have conducted a loan-level analysis of each of those 189 loans to establish that such alleged losses, if any, are even attributable to any alleged conduct of 1st Mariner." (Memo., p. 3:24-27.)  This argument has no merit.  A so-called "loan-level analysis" of the Serviced Loans is not required in order to render an opinion on FMB's failure to adhere to customary mortgage servicing standards and FNMA servicing requirements, and the resulting damages to Sun West.  Indeed, FMB's own mortgage servicing expert, Eleanor Johnson, _admitted_ under oath that she did not conduct a "loan-level analysis" of the Serviced Loans in connection with rendering her own expert opinion.  Instead, Ms. Johnson's opinions are solely based on "standard industry practice."  (Trial Ex. 152, pp. 5-6, ¶¶ 3.04, 3.05).  Contrary to FMB's contention, Mr. Burnett properly based his opinions on mortgage servicing industry standards, and a "loan-level analysis" was not required.  *See, e.g.*, *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189, 1198 (C.D. Cal. 2005) (recognizing that expert testimony regarding "business customs and practices" is admissible).

Additionally, FMB claims (without any evidentiary support) that "the testimony of SWMC's own expert, Mr. Burnett, establishes that the losses for which SWMC seeks recovery in this action were caused by SWMC's own failure to properly service the loans at issue after the transfer of servicing rights from 1st

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

Mariner on June 1, 2011." (Memo., p. 3:27-4:4.)  Again, FMB flagrantly misrepresents the evidence here.  In truth, Mr. Burnett opined that "First Mariner Bank failed to adhere to reasonable and customary servicing standards as well as specific FNMA requirements in respect to the sale and transfer of the HECM portfolio," and "the failure of First Mariner Bank to provide recorded assignments as required by the FNMA transfer approval letter resulted in untimely first legal actions by Sun West and associated debenture interest curtailments." (Trial Ex. 111, p. 1.) FMB also "failed to provide other crucial servicing and origination documents such as property appraisals, verification of age and identity among other documents that also directly led to curtailments of debenture interest." (*Id.*)  Accordingly, Mr. Burnett concluded that FMB's "practices regarding the transfer and the subsequent duties to provide servicing and origination documents or to cure such defects were not reasonable, customary or in compliance with the servicing standards and industry practices for the servicing of FNMA insured loans." (*Id.*)  The foregoing opinions, as well as Mr. Burnett's deposition testimony, directly contradict FMB's contention.

**G.     Sun West's Request For Damages In Connection With The LTC Litigation Is Supported By The Evidence**

With respect to the LTC Litigation, FMB contends that Sun West has not proffered any evidence to establish that the LTC Litigation "was in any way related to its allegations in the instant lawsuit and/or that such losses from that earlier, unrelated litigation are attributable to any alleged conduct of 1st Mariner." (Memo., p. 4:10-12.)  To the contrary, Sun West appropriately claims damages in connection with the LTC Litigation because Sun West would not have entered into any agreement with LTC, NGFS, or FMB concerning the Serviced Loans if Sun West had known that FNMA did not approve of the subject transaction.  In other words, the LTC Litigation would never have occurred but for FMB's failure to disclose to Sun West that FNMA did not approve of the transfer of servicing rights and fees as set forth in the subject agreements, the Services Agreement and the Assignment

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
175335.1

1  Agreement.

2  **H.    FMB's "Affirmative Defenses" Are Not Supported By The Law Or**

3  **The Evidence**

4      In its Memorandum, FMB admits that it has abandoned several affirmative

5  defenses, including Settlement, Failure of Consideration, Payment, Set Off/Off Set,

6  and Accord and Satisfaction.  (Memo., p. 33:25-34:5.)  Moreover, as a result of the

7  Court's February 8, 2017 Order granting FMB's motion for summary judgment as to

8  Sun West's negligence and fraud claims, FMB's affirmative defenses of

9  "contributory negligence/comparative fault" and "failure to establish facts sufficient

10  to support an award of punitive damages" are not applicable.  Thus, FMB's only

11  remaining affirmative defenses are discussed below.  For the reasons demonstrated

12  below, as well as those discussed in Sun West's Memorandum of Contentions of

13  Fact and Law, FMB's affirmative defenses are without merit.

14      **1.    Statute of Limitations**

15      For all of the reasons demonstrated in Section II.A above, the statute of

16  limitations does not bar Sun West's breach of written contract claim.  Sun West's

17  claim is timely.

18      **2.    Failure To State Claims Upon Which Relief Can Be Granted**

19      As a preliminary matter, this is not an affirmative defense, but rather a denial

20  that Sun West has adequately pleaded the elements of its claims.  *See Quintana v.*

21  *Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) (striking failure to state a claim because

22  it is not an affirmative defense); *Vogel v. OM ABS, Inc.*, 2014 WL 340662, *2 (C.D.

23  Cal. Jan. 30, 2014) ("failure to state a claim, fails as a matter of law because it is not

24  an affirmative defense, but rather a failure of Plaintiff's prima facie case.").

25      Nevertheless, Sun West has sufficiently stated a request for "compensatory

26  damages in an amount to be proven at trial," among other relief.  Sun West's

27  statement satisfies the notice requirements of Federal Rule of Civil Procedure

28  8(a)(3), which only requires "a simple request for damages."  *Mezzadri v. Med.*

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
175335.1

*Depot, Inc.*, 2015 WL 12572619, at \*11 (S.D. Cal. Feb. 12, 2015) ("The Ninth Circuit has stated of Rule 8(a)(3) that 'a simple request 'for damages' would satisfy the notice requirement [of Rule 8(a)(3)]'"); quoting *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1098 (9th Cir. 2001). Sun West was not required to plead its requests for damages with any more specificity. *Id.*

Furthermore, as previously demonstrated in Section II.B above, FMB was obligated to obtain FNMA's approval of the subject transactions. Sun West has consistently taken this position throughout this litigation.

### 3.   Laches

To establish laches, FMB must establish by a preponderance of the evidence that Sun West unreasonably delayed the filing of this lawsuit, and that FMB was prejudiced as a result. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001). As demonstrated in Section II.A above, Sun West's lawsuit is timely, and FMB has not been prejudiced in any way by Sun West's conduct.

### 4.   Waiver

For all of the reasons demonstrated in Section II.B above, Sun West has not waived any rights or conditions.

### 5.   Estoppel

The elements of estoppel are: "(1) The party to be estopped must know the facts; (2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) The latter must be ignorant of the true facts; and (4) He must rely on the former's conduct to his injury." *United States v. Ruby Co.*, 588 F.2d 697, 703 (9th Cir. 1978). In the instant case, FMB cannot establish estoppel because FMB cannot credibly claim that it was "ignorant of the true facts," or that it relied on Sun West's conduct to its detriment. In fact, the evidence shows that FMB knew that it was required to provide the Assignments of Mortgages to Sun West, as demonstrated in Section II.E above. In addition, the evidence demonstrates that the parties always understood that FMB was

17

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
175335.1

obligated to obtain FNMA's approval of the subject transaction, as previously discussed in Section II.E.  Furthermore, FMB has not (and cannot) show that it relied on Sun West's conduct to its detriment.

### 6.     Doctrine Of "Unclean Hands"

At trial, documentary and testimonial evidence will show that Sun West has not engaged in any misconduct, much less the type of misconduct that would give rise to an "unclean hands" defense.

### 7.     Release

"Under California law, a release is the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced ... and its effect is to extinguish the cause of action." *Hudson v. Lancaster State Prison*, 2009 WL 4730872, at *6 (C.D. Cal. Dec. 4, 2009).  In the instant case, Sun West has not abandoned, relinquished, or given up any right or claim, as demonstrated in Section II.B above.

### 8.     Failure To Mitigate

"The doctrine of mitigation of damages holds that [a] plaintiff who suffers damage as a result of ... a breach of contract ... has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided. " *Agam v. Gavra*, 236 Cal. App. 4th 91, 111 (2015) (internal quotations omitted).  However, "[t]he duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable." *Id*.  At trial, documentary and testimonial evidence will show that Sun West used reasonable efforts to mitigate its damages and that its losses could not have been avoided.

//

//

//

//

//

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

175335.1

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 2, 2017

EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP

By: */s/ Mary C. G. Kaufman*
       Scott E. Gizer
       Stephen Y. Ma
       Mary C.G. Kaufman
       Attorneys for Plaintiff
       SUN WEST MORTGAGE COMPANY,
       INC.



**PLAINTIFF SUN WEST MORTGAGE COMPANY'S TRIAL BRIEF**

175335.1